UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES G. COLLINS, JANELLE L. COLLINS, and CHADWICK C. COLLINS,<br><br>Appellants,<br><br>v.<br><br>NANCY L. WOLF, Chapter 7 Trustee,<br><br>Appellee. | Case No.: 19-CV-247 JLS (BLM)<br><br>**ORDER GRANTING MOTION TO DISMISS APPEAL FOR LACK OF JURISDICTION**<br><br>(ECF No. 9) |

Presently before the Court is Appellee Nancy L. Wolf's Motion to Dismiss Appellants Charles G. Collins, Chadwick C. Collins, and Janelle Collins' Bankruptcy Appeal ("Mot.," ECF No. 9). Also before the Court is Appellants' Opposition to ("Opp'n," ECF No. 15) and Appellee's Reply in support of (ECF No. 16) the Motion to Dismiss. Having considered the Parties' arguments and the law, the Court **GRANTS** Appellee's Motion to Dismiss.

## BACKGROUND

On December 7, 2011, Appellant Chadwick Collins filed for Chapter 7 bankruptcy. Mot. at 5. The relevant history for purposes of this appeal began on March 7, 2013, when Appellee Nancy L. Wolf, the appointed Chapter 7 Trustee, filed an adversary complaint against the Appellants seeking declaratory relief and recovery of Janelle and Chadwick's

1

19-CV-247 JLS (BLM)

former residence located at 1480 Beechtree Road, San Marcos, California 92078 (the "Beechtree Property").[1] *Id.* at 6.

Throughout these proceedings, Appellants have contended that Chadwick and Janelle sold Charles the Beechtree Property and that, even if that sale was ineffective, Charles owns an equitable interest in the property. *Id.* Appellants have also argued that, if Charles does not own the Beechtree Property, half the Property is separate property owned by Janelle and thus not part of the bankruptcy estate because she owned the Beechtree Property in joint tenancy with Chadwick. *Id.* The Bankruptcy Court disagreed, finding that the Charles had no right, title, or interest in the Beechtree Property and that Chadwick and Janelle owned the Property as community property, making it part of the bankruptcy estate. *Id.* Accordingly, the Bankruptcy Court entered an order for turnover of the Property in December 2016. *Id.* Appellants appealed the turnover order but did not seek or obtain a stay.[2] *Id.*

On August 10, 2017, the Bankruptcy Court approved the sale of the Beechtree Property. *Id.* at 7. The Beechtree Property was sold to a third-party purchaser, and the sale proceeds were paid to several creditors, with the remainder going to Chadwick's bankruptcy estate. *Id.* Appellants did not seek or obtain a stay of the sale order. *Id.*

On October 4, 2017, the Bankruptcy Court entered final judgment in the bankruptcy proceeding. *Id.* at 6. Appellants appealed to this Court two days later. *Id.* at 7. The Court affirmed the Bankruptcy Court's judgment on September 10, 2018, finding that neither Charles nor Janelle held any interest in the Beechtree Property. *See Collins v. Wolf*, 591 B.R. 752, 779 (S.D. Cal. 2018). Shortly after, Appellants filed a notice of appeal to the

///

///

---

[1] A more detailed recitation of the facts can be found in the Court's September 10, 2018 Order entered in the adversary proceeding. *See Collins v. Wolf*, 591 B.R. 752, 758–60 (S.D. Cal. 2018).

[2] The appeal of the turnover order was dismissed for lack of jurisdiction. *See In re Collins*, No. 316CV03112BENWVG, 2017 WL 4162336, at *5 (S.D. Cal. Sept. 19, 2017).

Ninth Circuit Court of Appeals.[3] Mot. at 7. Appellants did not seek a stay pending their appeal. *Id.*

The current appeal arises from the Bankruptcy Court's three November 15, 2018 Orders (together, the "Fee Orders") authorizing final compensation to: Chapter 7 Trustee Nancy Wolf (Appellants' Excerpt of Record ("ER"), ECF No. 8-1 at 104–108); Etes & Hoyt, APC, attorneys for the Trustee (*id.* at 109–13); and R. Dean Johnson, accountant for the Trustee (*id.* at 114–18) (together, the "Estate Professionals"). Appellants did not oppose the amount of the Fee Orders or whether the Estate Professionals should be paid. Appellants did, however, request that "any fee award be interim, not final" or that "any order awarding fees to the [Estate Professionals] specifically state that any compensation paid . . . be subject to disgorgement in the event the Collins Defendants prevail on their appeal." *Id.* at 101–02. The Bankruptcy Court rejected their request and entered the final Fee Orders without a disgorgement clause. *Id.* at 104–18. Appellants filed a motion to reconsider the Fee Orders, *id.* at 119–24; the Bankruptcy Court denied that motion. *Id.* at 164–69. Appellants then appealed all three of the final Fee Orders to this Court. *Id.* at 172–73.

**STANDARD OF REVIEW**

A district courts reviews a bankruptcy court's legal conclusions de novo and its factual findings for clear error. *In re Mortgs. Ltd.*, 771 F.3d 1211, 1214 (9th Cir. 2014). "Standing and ripeness are questions of law." *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1124 (9th Cir. 1996).

**DISCUSSION**

Appellants raise five issues on appeal that all essentially ask the same question: Did the Bankruptcy Court commit reversable error in granting the Fee Orders without making them subject to disgorgement? *See* ECF No. 8 at 4–5.

---

[3] The Ninth Circuit appeal has been held in abeyance pending a ruling by the California Supreme Court in the case of *In re Brace*, No. S252473 (filed Nov. 9, 2018).

Appellee contends that the Court must dismiss this appeal because Appellants lack standing to challenge the Fee Orders. Mot. at 8–10. After reviewing the current record on appeal to determine whether the Court has jurisdiction, as it must, *see Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (en banc) (holding courts must examine jurisdictional issues sua sponte), the Court concludes that Appellants lack standing to appeal the Fee Orders under both the bankruptcy-specific "person aggrieved" standing test and traditional Article III standing principles.[4]

## I. Standing Under the Person Aggrieved Test

"[T]o have standing to appeal a bankruptcy court's order, '[t]he appellant must be a "person aggrieved" by the bankruptcy court's order.'" *In re Kyung Sook Kim*, 433 B.R. 763, 781 (D. Haw. 2010) (second alteration in original) (quoting *In re P.R.T.C., Inc.*, 177 F.3d 774, 777 (9th Cir. 1999)). To meet the so-called "person aggrieved" test, an appellant must show they are "directly and adversely affected pecuniarily by an order of the bankruptcy court." *In re P.R.T.C.*, 177 F.3d at 777 (quoting *Fondiller v. Robertson*, 707 F.2d 441, 442 (9th Cir.1983)). An order has a direct and adverse pecuniary effect if it "diminish[es] the appellant's property, increase[s] its burdens, or detrimentally affect[s] its rights." *Id.*

To assess standing under the person aggrieved test in this case, the Court must determine the interests of each of the Appellants. Both Parties treat Appellants as a single unit with one interest. Janelle and Charles, however, have claimed an ownership interest in the Beechtree Property, while Chadwick has not. And Chadwick is a Chapter 7 debtor, while Janelle and Charles are not. Thus, their interests in having the Fee Orders be subject

///

---

[4] The Court notes that in Appellee's Motion, Appellee confines her argument to the narrow issue of standing to appeal the Fee Orders under the "aggrieved person" test. Mot. at 8–10. Although Appellee does not raise Article III standing, because the Court has an "independent obligation to inquire into [its] own jurisdiction," the Court finds it appropriate to address standing under Article III as well. *See Bova v. City of Medford*, 564 F.3d 1093, 1095 (9th Cir. 2009) (quoting *Perez-Martin v. Ashcroft*, 394 F.3d 752, 756 (9th Cir. 2005)).

to disgorgement differ. For this reason, the Court finds it necessary to assess Chadwick's standing under the person aggrieved test separately from Charles and Janelle's standing.

Regarding Chadwick, the Court finds that he lacks standing to bring this appeal. "Ordinarily, a debtor cannot challenge a bankruptcy court's order unless there is likely to be a surplus after bankruptcy." *In re P.R.T.C.*, 177 F.3d at 778 n.2. If the Ninth Circuit determines that the Beechtree Property is owned in whole or in part by Charles or Janelle, the estate assets could be dramatically reduced, making a surplus at the end of bankruptcy unlikely. And if Appellants are successful in making the Fee Orders subject to disgorgement—which is the only relief sought in this appeal—a surplus would be even less likely. Because Chadwick has not shown that making the Fee Orders subject to disgorgement could lead to a surplus of the estate, he cannot show that the omission of a disgorgement clause in the final Fee Orders "diminish[es his] property, increase[s] his burdens, or detrimentally affect[s] his rights." *See Fondiller*, 707 F.2d at 442. Therefore, Chadwick lacks standing to bring this appeal.

Turning to Janelle and Charles, the Court similarly finds that they lack standing. Appellee contends that because both the Bankruptcy Court and this Court determined that Janelle and Charles have no interest in the Beechtree Property or the money from its sale, they have no interest in the estate funds used to pay the fee awards authorized in the Fee Orders. Mot. at 9.

Janelle and Charles counter, arguing that the "Fee Orders have a tangible negative impact" on their interests for two reasons. Opp'n at 5. First, Janelle and Charles contend that their ownership interests in the Beechtree Property have not been finally decided because that issue is still being appealed. *Id.* If they win that appeal, they could have an interest in proceeds from the sale, some of which has been used to satisfy the final Fee Orders. *Id.* To fully protect their potential rights in the proceeds from the Beechtree Property, Janelle and Charles contend that the Fee Orders must either be interim or expressly subject to disgorgement. *Id.*

///

This interest, however, is entirely contingent on future events that might not occur. Currently, Janelle and Charles have no actual interest in the estate funds. Thus, the Fee Orders have not diminished Janelle or Charles's current property in any way. More importantly, Janelle and Charles have not shown that, absent the express disgorgement clause, they will be unable to recover the funds from the Estate Professionals if they prevail on appeal. Indeed, several Courts have noted that disgorgement of attorney's fees is a remedy available if funds are improperly disbursed. *See, e.g.*, *S.S. Retail Stores Corp. v. Ekstrom*, 216 F.3d 882, 884 (9th Cir. 2000) (finding disgorgement of attorney's fees a possible remedy because "[a]n order compelling disgorgement of [attorney's] fees and expenses would not require the bankruptcy court to unravel a complicated bankruptcy plan"); *see also In re Int'l Envtl. Dynamics, Inc.*, 718 F.2d 322, 326 (9th Cir. 1983) (noting disgorgement was a possible remedy because, despite the appellant failing to obtain a stay before appealing the bankruptcy court's order granting attorney's fees, the counsel receiving the fees was a party before the bankruptcy court and knew the appellant contested the fee award). The Fee Orders have therefore not adversely affected Janelle's or Charles's rights to recover the proceeds from the sale of the Beechtree Property if they are successful on appeal.

Second, Janelle and Charles contend that, absent an express disgorgement clause in the Fee Orders, Appellee will gain an advantage in their pending Ninth Circuit appeal. Opp'n at 6. Janelle and Charles believe that Appellee will argue their appeal is equitably moot because the money they could recover if they win their appeal has been disbursed. *Id.* The Court does not find this argument persuasive. Having to defend against a possible legal argument on appeal "has no direct and immediate impact on [Janelle's or Charles's] pecuniary interests." *See Fondiller*, 707 F.2d at 442 (finding appellant was not a "person aggrieved" where "only demonstrable interest in [the bankruptcy] order" was "as a potential party defendant in an adversary proceeding"). Moreover, Janelle and Charles have not shown that omitting the disgorgement clause will guarantee they will lose their

///

appeal. It may mean more briefing, but this is not a burden sufficient to confer standing under the person aggrieved test. *See id.*

For the reasons stated, the Court finds that none of the Appellants are persons aggrieved by the Fee Orders. As such, Appellants lack standing to bring this appeal.

## II. Article III Standing

In addition to failing the narrower standing requirements to appeal a bankruptcy court's order, the Court also finds that Appellants fail to show standing to bring this appeal under the traditional Article III standing requirements. Article III standing requires that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The "party seeking to invoke the court's jurisdiction" bears the burden of establishing jurisdiction. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993).

At issue here is whether Appellants have suffered an injury in fact.[5] "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). "Particularized injuries 'affect the plaintiff in a personal and individual way,' while a 'concrete injury must be *de facto*; that is, it must actually exist.'" *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1151 (9th Cir. 2017) (quoting *Spokeo*, 136 S. Ct. at 1548).

///

---

[5] The injury-in-fact component of standing is "closely related" to another Article III case or controversy requirement: ripeness. *Bova*, 564 F.3d at 1096. "[I]n many cases, ripeness coincides squarely with standing's injury in fact prong," *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc), because "the inquiry is largely the same: whether the issues presented are definite and concrete, not hypothetical or abstract." *In re Parvin*, 549 B.R. 268, 274 (W.D. Wash. 2016) (internal quotations omitted) (quoting *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010)). Although the Court focuses its analysis on injury in fact, Appellants' challenge to the Fee Orders is also not ripe for the same reasons discussed below.

The Court finds Appellants have not shown they suffered an injury in fact. Appellants seek only the right to disgorge the fees paid to the Estate Professionals if they win on appeal. Before they would have a right to even ask for disgorgement, however, multiple courts must make multiple rulings in their favor on multiple issues. Their alleged injuries are therefore not actual or imminent but are instead based on "a chain of events" that "can be hypothesized in which the action challenged eventually leads to actual injury." *N.W. Airlines v. FAA*, 795 F.2d 195, 201 (D.C. Cir. 1986).

For example, Janelle might suffer an injury from the lack of an express disgorgement clause only if the California Supreme Court rules in her favor in *In re Brace*, No. S252473 (filed Nov. 9, 2018), and the Ninth Circuit rules that Charles does not own the Beechtree property. Likewise, Charles would need the Ninth Circuit to rule in his favor on multiple issues regarding his interest in the property. In both of these scenarios, for an injury to occur based on the Fee Orders, the Ninth Circuit would have to rule that disgorgement is inappropriate (which, as noted above, is not a foregone conclusion, *see S.S. Retail Stores*, 216 F.3d at 884; *see also In re Int'l Envtl. Dynamics*, 718 F.2d at 326). Their ultimate injury thus "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (internal quotation marks omitted)). "Reaching th[ese] ultimate conclusion[s] is highly 'conjectural or hypothetical,' such that [A]ppellant[s] ha[ve] not alleged an injury in fact." *See In re Parvin*, 549 B.R. 268, 273 (W.D. Wash. 2016) (quoting *Northwest Airlines*, 795 F.2d at 201).

For these reasons, the Court finds that Appellants have failed to show a cognizable injury and thus lack standing.

///
///
///
///
///

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Appellee's Motion to Dismiss (ECF No. 9) for lack of jurisdiction and **DISMISSES WITHOUT PREJUDICE** Appellants' appeal (ECF No. 1). Appellee's pending motion for extension of time (ECF No. 10) is **DENIED AS MOOT**. The Clerk of Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: March 16, 2020

Hon. Janis L. Sammartino
United States District Judge